# Exhibit A

**LAFFEY, BUCCI & KENT LLP**
BY:    Brian D. Kent, Esquire
        M. Stewart Ryan, Esquire
371 Hoes Ln #200
Piscataway, NJ 08854
Phone (215) 399-9255
Fax (215) 241-8700
Attorneys for Plaintiff

| | | |
|---|---|---|
| JOHN DOE | : | **SUPERIOR COURT OF NEW JERSEY** |
| C/O Laffey, Bucci & Kent | : | **ATLANTIC COUNTY** |
| 371 Hoes Ln #200 | : | |
| Piscataway, New Jersey 08854 | : | |
| | : | |
| Plaintiff, | : | **DOCKET NO.** |
| | : | |
| | : | **CIVIL ACTION COMPLAINT** |
| v. | : | |
| | : | |
| Archdiocese of Philadelphia | : | **JURY TRIAL DEMANDED** |
| 222 N. 17th Street | : | |
| Philadelphia, Pennsylvania 19103 | : | |
| | : | |
| and | : | |
| | : | |
| | : | |
| ABC CORPORATIONS, ONE | : | |
| THROUGH TEN | : | |
| (said Names Being Fictitious) | : | |
| | : | |
| and | : | |
| | : | |
| JOHN DOE, ONE | : | |
| THROUGH TEN | : | |
| (said Names Being Fictitious) | : | |
| | : | |
| Defendants. | : | |

1

## CIVIL ACTION COMPLAINT AND JURY DEMAND

Plaintiff, John Doe, by and through his undersigned counsel, Laffey, Bucci & Kent, hereby files this Complaint, and complains of the above captioned defendants as follows:

## PARTIES AND VENUE

1.     Plaintiff John Doe is an adult male and because the claims involved in this Civil Action Complaint involve sexual abuse of John Doe at a time when he was a minor, his identity is being redacted from the instant complaint.  John Doe can be served and otherwise reached through his counsel of record Laffey, Bucci & Kent, 371 Hoes Ln #200, Piscataway, New Jersey 08854.

2.     At all times relevant hereto, upon information and belief, Defendant Archdiocese of Philadelphia ("Archdiocese") was and continues to be a Roman Catholic organization and a non-profit religious corporation authorized to conduct business, and conducting business, in the Commonwealth of Pennsylvania with its principal place of business located at 222 N. 17th Street, Philadelphia, Pennsylvania 19103.

3.     In 1979 and 1980, William McKenzie was assigned as a teacher at Our Lady of Lourdes School in Philadelphia. McKenzie also served as a basketball coach in a Catholic school in Upper Darby, PA. Upon information and belief at this same time McKenzie was also studying to become a member of religious life.

4.     Upon information and belief, McKenzie was a servant or agent of Defendant Archdiocese in 1979 and acting within the scope of his aforementioned legal relationship with the Archdiocese.  Accordingly, the Archdiocese is liable vicariously and derivatively for the acts of McKenzie under theories of respondeat superior master-servant, agency, and/or right of

2

control.

5.      At all times relevant hereto, the Archdiocese was acting by and through its employees, servants, and agents, in the operation of Our Lady of Lourdes School, and the Archdiocese of Philadelphia and the hiring, admitting, assigning, retaining, and supervising of teachers, priests, and other employees.  Accordingly, the Archdiocese is liable vicariously and derivatively for the negligent acts and omissions of these employees, servants, and agents while engaged in the operation of Our Lady of Lourdes School, and the Archdiocese of Philadelphia and the hiring, admitting, assigning, retaining, and supervising of teachers, priests, and other employees, including McKenzie, under theories of respondeat superior, master-servant, agency, and/or right of control.

6.      Defendants named in the above caption as John Doe, One through Ten [said names being fictitious, and hereinafter referred to as "John Doe"], were, at all relevant times, employees and/or agents of the Defendant Archdiocese involved in the operation of Our Lady of Lourdes School, and the Archdiocese of Philadelphia and the hiring, admitting, assigning, retaining, and supervising of teachers, priests, and other employees including McKenzie. The identification of these individuals is not known by the plaintiff at this time in the absence of discovery.  Plaintiff reserves the right to substitute the name(s) for those agents designated as John Doe when and if such information becomes available.

7.      Defendants ABC Corporations, One through Ten [said names being fictitious, and hereinafter referred to as "ABC"] are incorporated associations, corporations, or other jural entities that employed the defendants at all relevant times.  These corporations or other jural entities are vicariously and derivatively liable for the negligent conduct of the aforementioned

3

defendants under the theories of <u>respondeat superior</u>, master-servant, agency, and/or right of control.

8.      At all relevant times, all defendants in this action were acting by and through themselves in their individual capacities, and/or additionally by and through their actual and/or ostensible agents, servants, employees, which included entities and/or individuals over whom they had control or right of control.

9.      Venue is properly laid in the Superior Court of Atlantic County, New Jersey pursuant to R. 4:3-2(a) and (b).

## **FACTS GIVING RISE TO THE ACTION**

10.     At the time of McKenzie's ordination in the Archdiocese, McKenzie had pedophilic tendencies and posed a risk to the safety of children.

11.     Defendant Archdiocese knew or should have known before 1979 that their employees, including priests and other employees such as teachers, attracted men with pedophilic tendencies and who posed a risk to the safety of children.  With such knowledge, Defendant Archdiocese should have implemented reasonable screening of applicants to their schools, seminary, and other institutions to determine if they posed a safety risk to children.

12.     At the time of McKenzie's application and admission to teach in the Defendant Archdiocese, Defendant Archdiocese knew or should have known to exercise reasonable care and screening that McKenzie had pedophile tendencies and posed a risk to the safety of children.

13.     At the time of McKenzie's application and admission to teach in the Defendant Archdiocese, Defendant Archdiocese knew or should have known to exercise reasonable care and screening that McKenzie had pedophile tendencies and posed a risk to the safety of children.

14.     Further, during the course of his career teaching for Defendant Archdiocese, including prior to, during, and after the time John Doe was abused by McKenzie, Defendant Archdiocese knew or should have known of other instances of abuse sufficient to put Defendant Archdiocese on notice of the danger posed by McKenzie.

15.     John Doe was born on May 4, 1967.

16.     John Doe and his family were devout Catholics. When John Doe was in sixth grade, he transferred to Our Lady of Lourdes School. In seventh grade, John Doe first met William McKenzie. McKenzie taught John Doe through seventh and eighth grade at Our Lady of Lourdes School.

17.     While John Doe was in seventh grade, McKenzie invited John Doe to watch a Philadelphia Eagles playoff football game against the Chicago Bears with him. This invitation was made under the preface that altar boys were also going to be with them to watch the game. John Doe was an altar boy and was led to believe this event was part of his training, duties, and service, as an altar boy. John Doe's mother let John Doe accept the invitation and made a cake for McKenzie for the occasion.

18.      Arrangements were made to have John Doe meet McKenzie at the school before heading to watch the game with the other boys. When Doe and his mother arrived at the school, no other boys were at the school to meet McKenzie as they had expected. McKenzie quickly claimed that the other boys were meeting him at his house and McKenzie took John Doe back to his house.

19.     When John Doe got to McKenzie's house, there were no other boys at the house. John Doe and McKenzie watched some of the football game before McKenzie brought young

5

John Doe to his basement where there was a projector and a screen set up. At that point, McKenzie put pornography on the screen through the projector for the two of them to view.

20.     As this was happening McKenzie began instructing John Doe to start doing things. During this, McKenzie was touching himself and encouraging John Doe to touch McKenzie. As this continued, Doe began to start following McKenzie's instructions, which included John Doe masturbating himself.

21.     McKenzie then performed oral sex on John Doe, who in turn ejaculated into McKenzie's mouth.

22.     After this initial abusive occasion, McKenzie continued to meet with John Doe alone to sexually abuse him with a variety of different sexual acts that included fondling, anal penetration, and oral sex. During the oral sex, McKenzie would perform oral sex on John Doe and other times where he would force John Doe to perform oral sex on him. During the abuse, McKenzie would ejaculate on Doe's face, in his mouth ,and on his body.

23.     Ove the next two years while Doe was in seventh and eighth grade, McKenzie repeatedly sexually abused John Doe. This sexual contact and sexual abuse occurred in the school parking lot on Our Lady of Lourdes School premises, and within the school itself in the school bathroom and in the auditorium.

24.     McKenzie also took John Doe to Brigantine, New Jersey and abused John Doe in New Jersey. McKenzie would take trips to the shore where altar boys were present with him. One such trip where McKenzie brought John Doe lasted three to five days. There were no parents present on this trip. McKenzie was able to convince John Doe's mother to permit John Doe to attend the trip based on a representation that it was part of John Doe's service as an altar

boy. John Doe, too, was led to believe the trip was part of his service as an altar boy.

25.     While in New Jersey, McKenzie would have John Doe sleep in his bed with him. Doe was the only boy that McKenzie made do this and McKenzie required Doe to sleep in the nude next to McKenzie in the shared bed. While they were together in the bed at night, McKenzie forced Doe to perform oral sex on him. McKenzie also anally raped Doe at night. This happened each and every night that Doe was in New Jersey on his trip with McKenzie.

26.     When he was down the shore in Brigantine with the altar boys, McKenzie would also tell the boys he wanted to play a game with them. He then made the boys, including Doe, get naked and have them walk around the house in front of him and each other naked.

27.     In another instance, McKenzie took Doe down to Washington D.C. on a class trip. After the trip, McKenzie volunteered to take John Doe back to Doe's house but instead took Doe to McKenzie's house and anally raped him. During this, Doe wanted it to stop and would go somewhere in his mind to try and block it out. McKenzie eventually took Doe back to Doe's house.

28.     In some instances while McKenzie was abusing Doe, Doe asked to go to the bathroom in an effort to get away from him. McKenzie followed John Doe upstairs to make sure Doe was actually going to the bathroom like he said he was doing.

29.     Within the same time period where McKenzie was abusing John Doe, allegations that McKenzie was abusing another child who played on the basketball team that McKenzie coached. Monsignor Gillespie (a priest credibly accused of sexually abusing young boys), the lead pastor of Our Lady of Lourdes Church at the time, asked John Doe to write a letter of support for McKenzie. Gillespie did so by walking into Doe's classroom during class and

7

specifically told Doe what to write in the letter.  In addition to Monsignor Gillespie pressuring

Doe to write such letter, the school principal, Sister Rose, also came to the classroom and

encouraged the class to write letters of support regarding McKenzie. Based on the pressure to

write such a letter from church and school administrators, John Doe complied and wrote a letter

of support for McKenzie.

30.    McKenzie had been accused of sexually abusing young boys by using his

positions with the Archdiocese but the Archdiocese repeatedly concealed its knowledge of the

credible accusations of sexual abuse against McKenzie and instead of removing him from

service.

31.    The abuse Doe suffered was only made worse because of the threats made and

fear instilled by McKenzie. McKenzie repeatedly threatened Doe not to tell anyone about the

sexual abuse and told Doe he would be in trouble if Doe told anyone about what was happening

to him. McKenzie told Doe that he would fail Doe in class if Doe ever told anyone about the

abuse. As a result of the threats, which led to shame and embarrassment as well as fear, Doe told

no one and instead lost trust in adults that were supposed to protect him, including Gillespie and

Sister Rose, who additionally pressured Doe to write a letter of support for McKenzie when

McKenzie had been accused of sexually abusing another child.

32.    As a direct and proximate result of the sexual abuse by McKenzie, Plaintiff

suffered physical and emotional injuries, as more fully set forth in this Complaint. As a result of

the abuse by McKenzie, John Doe was severely mentally, psychologically, and emotionally

damaged. John Doe sustained severe psychological and emotional distress, including symptoms

of post-traumatic stress disorder, manifested by physical ailments and complaints, including, but

not limited to, substance abuse that resulted in an overdose.   John Doe repeatedly thought about suicide, and even attempted suicide on multiple occasions, with the first time being when he was just in eighth grade. Doe lived in fear of McKenzie given his position in the church, community, and John Doe's own family. Doe had his sense of life fulfillment robbed from him as a result of the abuse. Doe had extreme difficulty with interpersonal relationships, especially intimate relationships, and only married recently because of the effects of the abuse. As a result of the abuse by McKenzie, Doe has questioned his sexual identity. Doe has never had children because of these difficulties with relationships stemming from the abuse. Doe became disconnected from his family as a result of the abuse and had difficulty in school as a result of the abuse. Doe developed substance dependencies as a result of the abuse and has been forced to undergo psychiatric treatment due to the abuse. Doe has experienced uncontrolled anger and lost confidence since suffering this entirely preventable abuse at the hands of McKenzie.

33.    John Doe has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life, and has suffered and continues to suffer spiritually.  The significant emotional and psychological injuries sustained by Plaintiff dramatically transformed his personality.

34.    Throughout his life since the abuse, John Doe has struggled with substance abuse of drugs and alcohol, suppression of memories, confusion over his sexuality, inability to maintain healthy relationships, and symptoms of post-traumatic stress disorder.  As a result of these problems John Doe has suffered extreme difficulty in interpersonal relationships, among other problems.

9

35.     Defendant Archdiocese through its agents knew or should have known in the exercise of reasonable care and supervision that McKenzie was engaging in the abuse of John Doe described above, including the abuse of John Doe in the state of New Jersey, and intervened to either prevent the abuse, prevent his access to children, or terminate him from service.

36.     All of the above physical, psychological, and emotional injuries were proximately caused by the negligence, carelessness, recklessness, and other tortious and outrageous conduct of Defendant Archdiocese as set forth in this Complaint. John Doe's injuries were caused solely by the negligence of Defendant Archdiocese, as set forth more fully herein, and were not caused or contributed thereto by any negligence on the part of John Doe.

## **Defendants Violated the Duties Imposed Upon Them by Law**

37.     At all times relevant hereto, Defendant Archdiocese operated multiple parishes and schools in Philadelphia County, Pennsylvania and its surrounding counties.

38.     The parishes and schools included elementary schools, with a student population of pre-teen children.  Students in these schools and parishes, including John Doe, had interactions with clergy and faculty and were taught to respect and listen to them and follow and obey their commands.

39.     The Archdiocese owed a duty to the children left in its custody and control, including John Doe herein, to provide a reasonably safe environment for them, to ensure their safety, and to provide reasonably necessary supervision and oversight for their safety and welfare.

40.     The Archdiocese occupied a special relationship to the children left in its custody and control, including Plaintiff herein, and owed to them the highest duty of care to ensure their

10

safety and well-being.

41.     The Archdiocese occupied a position of *in loco parentis*, and were under a duty to protect John Doe, and to provide him with safety and supervision akin to that which would have been provided by his own parents.

42.     As set forth in this Complaint, the Archdiocese failed to fulfill its legal duty to provide a reasonably safe environment for the children left in its custody, care, and/or control.

43.     The Archdiocese had a duty to take reasonable steps to ensure that employees in their parishes and schools were psychologically fit to supervise, instruct, and mentor the children in the parishes and schools.

44.     As set forth in this Complaint, the Archdiocese failed to fulfill its legal duty to ensure that employees in their parishes and schools were psychologically fit to supervise, instruct, and mentor the children.

45.     To the contrary, the Archdiocese assigned employees to positions within their schools and parishes, who it knew, and/or had reason to know, were pedophiles, child molesters, sexual predators, and mentally-ill.

46.     The Archdiocese was also aware of a pattern and practice of employees taking children to the state of New Jersey, while acting within the course and scope of their employment and/or the agency relationship, and sexually abusing those children in the state of New Jersey.

47.     As a result of Defendant's negligent, careless, reckless, and intentional acts and omissions, countless children, including John Doe, were sexually abused by depraved predators and molesters, who exploited their positions and defiled innocent children.

48.     As set forth in this Complaint, Defendant Archdiocese failed to take reasonable

steps to ensure that employees were psychologically fit to supervise, instruct, and mentor students in the Archdiocese's schools. As a direct result of Defendant's tortious acts and omissions, John Doe suffered the injuries set forth in this Complaint.

49.     In fact, Defendant knowingly permitted the Archdiocese to employ, retain, and assign individuals who they knew, and/or had reason to know, were psychologically unfit to supervise, instruct and mentor children. As a direct result of Defendants' acts, Plaintiff suffered the injuries set forth in this Complaint.

50.     The Archdiocese employed, retained, and assigned individuals who it knew or should have known were pedophiles, sexual predators, and/or mentally ill.

51.     Defendant Archdiocese failed to take reasonable steps to ensure that employees in Archdiocese schools and churches were psychologically fit to supervise, instruct, and mentor students in those schools. These failures included the following:

a.     Failure to investigate the backgrounds of teachers and clergy in the employ or service of the Archdiocese;

b.     Failure to prohibit, restrict, or limit the activities of teachers and clergy suspected of sexual abuse and/or those known to be sexual predators and abusers;

c.     Failure to reasonably and properly investigate allegations of sexual molestation and/or child abuse;

d.     Failure to properly train and instruct investigators;

e.     Failure to have in place standards of acceptable and unacceptable conduct;

f.     Failure to formulate, effectuate, and enforce policies to prevent and/or minimize the risk of sexual abuse of children by agents, servants, and/or employees of the Archdiocese;

g.     Failure to designate competent investigators to evaluate complaints of sexual abuse;

h.     Failure to have in place standards for reporting acts of sexual misconduct to law enforcement authorities; and

i.     Failure to have in place standards for reporting acts of sexual misconduct to public officials, parents, and/or parishioners.

52.     The Archdiocese employed, retained, and assigned individuals whose services

12

frequently placed them into close contact with children outside the presence of other adults.

53.     The Archdiocese had a duty to take reasonable steps to ensure that individuals whose duties placed them in close proximity to children were psychologically fit to perform those duties without jeopardizing the safety of the children.

54.     The Archdiocese had a duty to take reasonable steps to ensure that individuals they employed did not sexually abuse children and/or travel with children to locations outside the geographic territory of the Archdiocese in order to sexually abuse them.

55.     The Archdiocese had a duty to take reasonable steps to supervise the mentoring and other interactions between its employees and the children left in their care and custody.

56.     The Archdiocese failed to take reasonable steps to ensure that McKenzie was psychologically fit to mentor and/or interact with children in Archdiocese schools and parishes even after they knew and/or should have known of the dangers posed by McKenzie.  As a direct result of the Defendant's acts, John Doe suffered the injuries set forth in this Complaint.

57.     In fact, the Archdiocese employed, retained, and assigned personnel who it knew and/or had reason to know were psychologically unfit to supervise, instruct, and mentor children, including, but not limited to, McKenzie.

58.     The Archdiocese employed, retained, and assigned personnel who it knew, or should have known, were pedophiles, sexual predators, and/or mentally ill, including, but not limited to, McKenzie.

59.     Defendant's wrongdoing, however, did not stop there. The Archdiocese employed deliberate strategies to conceal known abuse by individuals in the employ or service of the Archdiocese. These strategies included the following:

13

a.   Conducting sham investigations which were designed to avoid establishing culpability of individuals accused of sexual abuse;

b.   Failing to interview witnesses or persons who possessed, or may have possessed, information which might tend to establish the guilt of an accused individual;

c.   Deliberately and aggressively investigating claimants who leveled allegations against accused employees rather than investigating the employees themselves;

d.   Purposefully failing to inform parishioners and others in school communities of the acts of sexual misconduct and/or allegations of same, despite circumstances which gave rise to a duty to disclose such information;

e.   Purposefully refusing to notify law enforcement officials when there existed reasonable grounds to believe that an Archdiocesan priest or teacher had engaged in improper sexual conduct with children; and

f.   Purposefully destroying record evidence of misconduct by priests, teachers, or other Archdiocesan personnel.

60.     The Archdiocese outrageously employed these strategies knowing that they exposed children, including John Doe, to a significant risk of serious physical and psychological harm, including a significant risk of sexual abuse. The Archdiocese actions were willful, malicious, wanton, outrageous, abhorrent, abominable, revolting, vile, and unconscionable because Defendant Archdiocese was motivated by a desire to protect the Church at the expense of children who would foreseeably be sexually abused and raped.

### COUNT I - NEGLIGENCE
**Plaintiff John Doe v. Defendant Archdiocese of Philadelphia, John Doe, One through Ten, and ABC Corporations, One through Ten**

61.     The previous paragraphs are incorporated herein by reference.

62.     The recklessness, negligence and/or carelessness of Defendants Archdiocese of Philadelphia, John Doe, One through Ten, and ABC Corporations, One through Ten, by and through their actual or apparent agents, servants, and/or employees, consisted of, among other things, the following:

a.   Recklessly, negligently and/or carelessly failing to observe and supervise the

14

relationship between John Doe and McKenzie;

b.  Recklessly, negligently and/or carelessly failing to have policies and procedures to require supervision and observation of the relationship between John Doe and McKenzie;

c.  Recklessly, negligently and/or carelessly failing to recognize McKenzie's conduct described herein as creating a risk of sexual abuse of children;

d.  Recklessly, negligently and/or carelessly failing to have policies and procedures to require supervision and observation of John Doe and McKenzie;

e.  Failing to investigate prior allegations against McKenzie that involved sexual misconduct;

f.  Recklessly, negligently and/or carelessly failing to identify McKenzie as a sexual abuser;

g.  Recklessly, negligently and/or carelessly failing to investigate behavior of McKenzie that put the Defendant on notice the McKenzie was a potential pedophile;

h.  Recklessly, negligently, and/or carelessly failing to identify McKenzie's prior sexual abuse of children;

i.  Recklessly, negligently, and/or carelessly ratifying McKenzie's conduct;

j.  Recklessly, negligently and/or carelessly failing to investigate McKenzie being alone with John Doe;

k.  Recklessly, negligently and/or carelessly failing to investigate McKenzie taking John Doe to the state of New Jersey;

l.  Recklessly, negligently and/or carelessly failing to adequately check McKenzie's background, before employing him at Our Lady of Lourdes School;

m.  Recklessly, negligently and/or carelessly failing to have policies and procedures in place to screen individuals for the possibility of being sexual predators;

n.  Failure to use due care under the circumstances;

o.  Conducting sham investigations which were designed to avoid establishing culpability of employees accused of sexual abuse;

p.  Failing to interview witnesses or persons who may have possessed information which might tend to establish the guilt of an accused employee;

q.  Deliberately and aggressively investigating claimants who leveled allegations against employees rather than investigating the employees themselves;

r.  Purposefully failing to inform parishioners or school community members of the acts of sexual misconduct and/or allegations of same, despite circumstances which gave rise to a duty to disclose such information;

s.  Purposefully refusing to notify law enforcement officials when there existed reasonable grounds to believe that an Archdiocese employee had engaged in improper sexual conduct with children;

t.  Purposefully destroying record evidence of misconduct by Archdiocese personnel; and

u.  Negligence as may be proven from facts now exclusively in the possession of Defendants, which may be ascertained after the filing of this Complaint.

**WHEREFORE**, Plaintiff John Doe, demands judgment against Defendants Archdiocese of Philadelphia, John Doe, One through Ten, and ABC Corporations, One through Ten, in an amount in excess of the local arbitration rules, exclusive of prejudgment interest, costs and damages for pre-judgment delay, and such other legal and equitable relief as the Court deems appropriate.

## COUNT II - NEGLIGENT SUPERVISION
**Plaintiff John Doe v. Defendants Archdiocese of Philadelphia, John Doe, One through Ten, and ABC Corporations, One through Ten**

63.     The previous paragraphs are incorporated herein by reference.

64.     Defendants Archdiocese of Philadelphia, John Doe, One through Ten, and ABC Corporations, One through Ten, knew or should have known of the need to supervise seminarians and priests in the their relationships with young children.

65.     Defendants Archdiocese of Philadelphia, John Doe, One through Ten, and ABC Corporations, One through Ten, knew or should have known of the particular risk posed by McKenzie based on, among other things, his history of sexually abusing children, and his behavior indicative of an intent to isolate, groom, and facilitate sexually abusing young boys.

66.     The negligence and recklessness of Defendants Archdiocese of Philadelphia, John Doe, One through Ten, and ABC Corporations, One through Ten, for the conduct of their actual or apparent agents, servants, and/or employees, in the supervision of McKenzie consists of one or more of the following:

      a.      Failing to use due care in supervising McKenzie's relationship with John Doe; and,

      b.      Failing to investigate and supervise the relationship between John Doe and McKenzie in light of the fact that McKenzie had been previously investigated

16

for sexual misconduct; and

c.    Negligence as may be proven from facts now exclusively in the possession of Defendants, which may be ascertained after the filing of this Complaint.

**WHEREFORE**, Plaintiff John Doe, demands judgment against Defendants Archdiocese of Philadelphia, John Doe, One through Ten, and ABC Corporations, One through Ten, in an amount in excess of the local arbitration rules, exclusive of prejudgment interest, costs and damages for pre-judgment delay, and such other legal and equitable relief as the Court deems appropriate.

### COUNT III - NEGLIGENT HIRING AND RETENTION
**Plaintiff John Doe v. Defendants Archdiocese of Philadelphia, John Doe, One through Ten, and ABC Corporations, One through Ten**

67.    The previous paragraphs are incorporated herein by reference.

68.    Defendants knew or should have known prior to the John Doe's abuse that John Doe and other young children in its churches and schools were vulnerable and potential victims of sexual abuse.

69.    Defendants also knew of should have known that prior to John Doe's abuse that the access to vulnerable youths and the trust and authority placed in teachers and other Archdiocesan employees makes such positions enticing jobs and vocations to pedophiles and others seeking to abuse and exploit children.

70.    Defendants owed a duty to exercise reasonable care in the selection and retention of employees in the Defendant Archdiocese, and specifically a duty to be on high look out for possible pedophiles and others seeking to abuse and exploit children.

71.    Defendants failed to exercise reasonable care in the selection of and retention of McKenzie as an employee by among other things, the following:

17

a.    Failing to conduct a thorough background check of McKenzie;

b.    Failing to thoroughly and reasonably investigate McKenzie's sexual history;

c.    Failing to learn of or investigate McKenzie's history of sexual impropriety with young boys and his proclivity to sexual assault young boys;

d.    Failing to conduct a thorough interview with McKenzie;

e.    Failing to investigate whether McKenzie had any inappropriate sexual interest in young boys;

f.    Failing to use due care in the selection of McKenzie as an employee interacting with children; and

g.    Failing to use due care in the retention of McKenzie as an employee providing services to young vulnerable children.

**WHEREFORE**, Plaintiff John Doe, demands judgment against Defendants Archdiocese of Philadelphia, John Doe, One through Ten, and ABC Corporations, One through Ten, in an amount in excess of the local arbitration rules, exclusive of prejudgment interest, costs and damages for pre-judgment delay, and such other legal and equitable relief as the Court deems appropriate.

**LAFFEY, BUCCI & KENT, LLP**

BY: _____

BRIAN D. KENT
M. STEWART RYAN
Attorneys for Plaintiff, John Doe

DATED: November 29, 2021

18

### JURY DEMAND

Plaintiff hereby demand a trial by jury as to all issues.

### DEMAND FOR COMPLIANCE WITH
### N.J. COURT RULES 1:5-1(a) AND 4:17-4(c)

TAKE NOTICE that the undersigned attorney, counsel for Plaintiff, hereby demands, pursuant to the provisions of R.1:5-1(a) and 4:17-4(c), that each party serving pleadings or interrogatories and receiving responses thereto shall serve copies of all such pleadings, interrogatories, and responses thereto upon the undersigned, and further

TAKE NOTICE that this is a continuing demand.

### DESIGNATION OF TRIAL COUNSEL

Brian D. Kent, Esquire is hereby designated trial counsel for Plaintiff, John Doe.

### DEMAND FOR DISCOVERY OF INSURANCE COVERAGE

Pursuant to New Jersey Court Rule 4:10-2(b) demand is made that defendant(s) disclose to plaintiff's attorney whether or not there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or indemnify or reimburse for payments made to satisfy the judgment and provide plaintiffs' attorney with true copies of those insurance agreements or policies, including, but not limited to, any and all declaration sheets.  This demand shall include and cover not only primary coverage, but also any and all excess, catastrophe and umbrella policies.

### DEMAND FOR ANSWERS TO INTERROGATORIES

Demand is hereby made for fully responsive answers to Form C Interrogatories appearing in Appendix II to the Rules of Court.

## **RULE 4:5-1 CERTIFICATION**

I, Brian D. Kent, of full age, do certify that I am the attorney for the plaintiff herein and that to my knowledge there are no other actions or arbitrations pending as a result of the incidents described in the foregoing Complaint.

LAFFEY, BUCCI & KENT, LLP

BY: _____

BRIAN D. KENT
M. STEWART RYAN
Attorneys for Plaintiff, John Doe

DATED:  November 29, 2021

# Civil Case Information Statement

## Case Details: ATLANTIC | Civil Part Docket# L-003814-21

**Case Caption:** DOE #1 JOHN  VS ARCHDIOCESE OF
PHILA DELPHIA

**Case Initiation Date:** 11/29/2021

**Attorney Name:** BRIAN DOOLEY KENT

**Firm Name:** LAFFEY BUCCI & KENT LLP

**Address:** 1100 LUDLOW ST STE 300

PHILADELPHIA PA 19107

**Phone:** 2035307516

**Name of Party:** PLAINTIFF : DOE #1, JOHN

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** ASSAULT AND BATTERY

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 12 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** YES

**Are sexual abuse claims alleged by: JOHN DOE #1?** YES
**Plaintiff's date of birth:** 05/04/1967
**Est. date of first incident of abuse:** 01/01/1979

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
   **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
   **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

| | |
|---|---|
| 11/29/2021 | /s/ BRIAN DOOLEY KENT |
| Dated | Signed |